UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED
2019 JUL 29 P 12: 10
STEPHEN C. DRIES
CLERK

| | |
|---|---|
| Francisco J. Mimo-Lannoy; | ) |
| Steven H. Mimo-Lannoy; | ) Case No. **19-C-1087** |
| | ) |
| v. | ) |
| | ) |
| Froedtert South, INC; | ) |
| Saint Catherine's Medical Center; | ) |
| Danielle Dumas; | ) |
| Ashley Tobin | ) |
| | ) |
| | ) |
| | ) |

## PRELIMINARY STATEMENT

1. Although the United States Supreme Court ruled in Obergefell v. Hodges, 135 S.Ct. 2584 (2015) that gay couples have a Constitutional right to marry, the assault on the rights of gay people who chose to get married carries on. Now St. Catherine's Medical Center a hospital operated under the Froedtert South INC corporation, has engaged in its own attack on marriage of persons of the same sex, with absolute disregard of the rights conferred

upon a married couple by the Laws and Constitution of the State of Wisconsin and Laws and Constitution of the US.

In their ruling the Supreme Court did not overturn the premise that marriage is a civil right, affording to gay couples the same rights and responsibilities that were afforded to straight couples before the ruling.

2. On January 14th, 2017 Francisco Mimo-Lannoy was transported from Wilmot Mountain Resort to St. Catherine's Medical Center hospital, both in Kenosha county, Wisconsin, by means of ambulance; after suffering an accident in the tubing course. While his husband Steven Mimo-Lannoy drove their car to the hospital.

3. On a moment of absolute vulnerability for any couple, where the level of anxiety and worry for the injured spouse is higher than ever, the Defendants took it upon themselves to use that opportunity and conspired to deprive Francisco Mimo-Lannoy of the rights afforded to any married couple by the Laws and Constitution of the US and the Laws and Constitution of the State of Wisconsin.

4. The actions of the Defendants were simply an abuse of power to attack Francisco and Steven Mimo-Lannoy because they are a married couple who happen to be of the same sex.

5. Mr. and Mr. Mimo-Lannoy were both emotionally devastated by Defendants' intimidating and discriminatory conduct. Defendants' conduct was not only heinous and despicable, but also was unlawful and carried out in violation of the State of Wisconsin and US Constitutions and Violation of Federal and State law.

6. Defendants response in mediation at the Wisconsin Equal Rights Division (ERD) was so insulting to Plaintiff's Francisco Mimo-Lannoy intelligence, furthermore Defendants lack

of action in investigating and producing a formal report to correct the not only a vicious, but also illegal assault to Plaintiffs civil rights. Furthermore, Plaintiffs feel Defendants response and actions in the aftermath have been targeted to make the matter go away and not to provide justice to the Plaintiffs. Plaintiffs have felt mocked again by Defendants and now Plaintiffs are seeking justice in Federal court.

7. Plaintiffs have filed this action to hold Defendants accountable for its unlawful refusal to provide gay married couples and individuals with the same rights and treatment as it provides straight married couples and individuals, and to ensure that other LGBT customers are not subject to this unlawful treatment.

## JURISDICTION AND VENUE

8. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as this action involves an amount in controversy exceeding $75,000 and is between citizens of a State and citizens or subjects of a foreign state.

9. The Court has Federal Question jurisdiction over this matter pursuant to 28 U.S.C. 1331 as this involves the US Constitution and the US laws and neither party is the US government.

10. The court has supplemental jurisdiction pursuant to 28 U.S. Code § 1367; Plaintiffs assert their right to seek remedies in this honorable court for any violation of Wisconsin Law committed by Defendants related to this claim.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants Froedtert South, Inc., St. Catherine's Medical Center Hospital; Ms. Tobias and Ms. Dumas. (collectively, "Froedtert South", "Defendants"), reside or work in Kenosha county, Wisconsin.

# PARTIES

12. **The Plaintiffs**

    Plaintiff 1

    | | |
    |---|---|
    | Name | Francisco J. Mimo-Lannoy and Steven H. Mimo-Lannoy |
    | Street Address | 3308 N Manor Dr. |
    | City and County | Lansing and Cook |
    | State and Zip Code | IL 60438 |
    | Telephone Number | 917-4024924 |
    | E-mail Address | fjmimo@yahoo.com |

    Plaintiff 2

    | | |
    |---|---|
    | Name | Steven H. Mimo-Lannoy |
    | Street Address | 3308 N Manor Dr. |
    | City and County | Lansing and Cook |
    | State and Zip Code | IL 60438 |
    | Telephone Number | 312-5150530 |
    | E-mail Address | steven.lannoy@yahoo.com |

13. **Defendants**

    Defendant 1

    Froedtert South, Inc., is a corporation with its principal place of business in Kenosha County, Wisconsin, and is duly organized and existing under and by virtue of the laws of the State of Wisconsin.

    | | |
    |---|---|
    | Street Address | 6308 8th Ave |
    | City and County | Kenosha and Kenosha |
    | State and Zip Code | WI 53143 |
    | Telephone Number | 262-6562111 |

Defendant 2

St. Catherine's Medical Center, it is a hospital with its principal place of business in Kenosha County, Wisconsin, and is duly organized, regulated and existing under and by virtue of the laws of the State of Wisconsin.

| | |
|---|---|
| Name | St. Catherine's Medical Center |
| Street Address | 9555 76th St. |
| City and County | Pleasant Prairie |
| State and Zip Code | WI 53158 |
| Telephone Number | 262-577800 |

Defendant 3

Ms. Ashley Tobin is an employee of St. Catherine's Medical Center hospital

| | |
|---|---|
| Name | Ms. Ashley Tobin |
| Street Address | 9555 76th St. |
| City and County | Pleasant Prairie |
| State and Zip Code | WI 53158 |
| Telephone Number | 262-577800 |

Defendant 4

Ms. Danielle Dumas is an employee of St. Catherine's Medical Center hospital

| | |
|---|---|
| Name | Ms. Danielle Dumas |
| Street Address | 9555 76th St. |
| City and County | Pleasant Prairie |
| State and Zip Code | WI 53158 |
| Telephone Number | 262-577800 |

# FACTUAL ALLEGATIONS

14. On January 14th, 2018 the Mimo-Lannoys and 3 other friends of the couple, went on a day trip to Wilmot Resort in Wilmot, Kenosha County, Wisconsin, with the purpose of sliding down the slopes in the tubing course within the resort.

15. Francisco Mimo-Lannoy was run over at the end of the slope by the next person sliding down the course.

16. Within 30 Minutes of the accident, Francisco Mimo-Lannoy was unable to walk and his back was spasming involuntarily, causing him extreme pain and crippling his ability to move in any way.

17. Francisco's husband Steven Mimo-Lannoy, called 911 and the EMT paramedics and an ambulance came over, they evaluated Francisco Mimo-Lannoy and decided he needed to be transported to a medical facility for examination and treatment.

18. Due to proximity to the area of the accident, the EMTs decided to transport Francisco Mimo-Lannoy to St. Catherine's Medical Center Hospital.

19. Francisco Mimo-Lannoy was brought into the Emergency Department (ED) by the paramedics, Francisco Mimo-Lannoy was immediately assigned to room 5 at St Catherine's ED, while the paramedics and nurses took care of the paperwork related to his transfer.

20. Francisco Mimo-Lannoy's attending nurse, Ms. Ashley Tobin, started tending to Francisco Mimo-Lannoy, Francisco Mimo-Lannoy asked Ms. Tobin to have his husband next to him in the room.

21. Ms. Tobin told Francisco Mimo-Lannoy that Steven Mimo-Lannoy had not arrived at St. Catherine's Medical Center yet.

22. Steven Mimo-Lannoy saw Francisco Mimo-Lannoy being carried out off of the ambulance into the ED, which makes him present at the moment Francisco Mimo-Lannoy requested his presence.

23. Immediately, Steven Mimo-Lannoy asked Ms. Danielle Dumas, the receptionist at the ED area to be let in to see his husband, Francisco Mimo-Lannoy, who had just been brought inside the ED.

24. Ms. Dumas proceeded to tell Steven Mimo-Lannoy that it would be a few minutes while they set Francisco Mimo-Lannoy in his room, Ms. Dumas proceeded to tell Steven Mimo-Lannoy to take a seat in an irritated, perhaps rude tone; very different to the tone she was using with other family members.

25. Francisco Mimo-Lannoy asked again Ms. Tobias to have his husband Steven Mimo-Lannoy brought to the room at the ED, Ms. Tobias told Francisco Mimo-Lannoy once they finished the intake; they would bring Steven Mimo-Lannoy in.

26. The intake finished, Ms. Tobias left the room, Francisco Mimo-Lannoy assumed she was going to get his husband and bring him over the room.

27. A good while later when Ms. Tobias came back to the room, Francisco Mimo-Lannoy asked again where was his husband Steven Mimo-Lannoy.

28. Ms. Tobias told him some story about the doctor not wanting family members in the ED room, while he was looking at the patient and left. Meanwhile, Francisco Mimo-Lannoy was still in extreme pain and very distressed to even put up a fight.

29. Meanwhile, Steven Mimo-Lannoy was sitting in the waiting area watching how Ms. Dumas personally escorted everyone, inside the ED, to be with their loved ones. As long as their sexual orientation was to her satisfaction.

30. Steven Mimo-Lannoy asked again Ms. Dumas to be take him to see his husband, Ms. Dumas responded the room was too small to have visitors.
31. About an hour or more in the room and Francisco Mimo-Lannoy had been left there with no visit form anyone, Francisco Mimo-Lannoy heard his husband voice yelling from afar.
32. Steven Mimo-Lannoy had gone for a third time to ask Ms. Dumas to take him to his husband, Ms. Dumas responded to him, in a very rude and sarcastic tone, "they know already *someone* is here to see him".
33. Steven Mimo-Lannoy lost his temper when he heard the word "someone", in addition to witnessed for over an hour how everyone, but him; was personally escorted into the ED by Ms. Dumas to be with their loved ones; Steven Mimo-Lannoy reached his breaking point yelling that he was not someone, he was Francisco Mimo-Lannoy's husband and demanding to see him right now.
34. The commotion was great and everyone present in the waiting area or inside the ED heard the commotion; MS. Dumas had no other choice, but to allow Steven Mimo-Lannoy into the ED to see his husband.
35. Instead of escorting him, as Ms. Dumas had been doing with everyone else, she in a very rude and condescending tone told Steven Mimo-Lannoy go ahead, as she buzz him into the ED, without even informing Steven Mimo-Lannoy of what room Francisco Mimo-Lannoy was being attended.
36. One unidentified employee, comes to Francisco Mimo-Lannoy and whispers to him, they are letting your husband in right now, it seemed he was afraid of being known to be helping.
37. That same unidentified employee went to get Steven Mimo-Lannoy and told him where Francisco Mimo-Lannoy was and pointed Steven Mimo-Lannoy in the right direction.

38. When Steven Mimo-Lannoy visible altered finally found room 5, he got even angrier when noticing that room 5 was not only huge, but it was so big, it even had its own private bathroom.

39. Francisco Mimo-Lannoy told Steven about the set of excuses and misleading statements from Ms. Tobias, Steven Mimo-Lannoy told Francisco Mimo-Lannoy the reasons he wasn't there sooner, at that moment they realized they had been targeted for being a gay couple.

40. On 03/02/2018 Francisco Mimo-Lannoy filed a complaint with the Equal Rights Division (ERD) of the State of Wisconsin.

41. On 03/20/2018 Defendants contacted the ERD to request and extension from 03/20/2018 to 03/29/2018 alleging more time needed to investigate the complaint and provide an adequate response, Defendant was granted an extension until 04/06/2019

42. On 04/05/2018 Defendants contacted the ERD to request a second extension to the deadline to file their response until 05/15/2018, alleging their CEO was trying to schedule a lunch with the Plaintiffs and more time was needed.

43. Plaintiffs and Defendants' CEO agreed on a lunch on 05/24/2018 in downtown Chicago.

44. On 04/11/2018 having missed the deadline to file a response, and without filing a response, Defendants asked the ERD to proceed with mediation.

45. On 04/11/2018 the ERD contacted Francisco Mimo-Lannoy asked him if he was OK to proceed with mediation, Francisco Mimo-Lannoy responded yes.

46. On 05/15/2018 Defendants responded to the ERD they were available on 07/06/2018 for mediation.

47. On 05/17/2018 Francisco Mimo-Lannoy receives the mediation letter scheduled for

07/06/2018.

48. On 05/22/2018 Defendants CEO notified Francisco Mimo-Lannoy that, per advice of their legal counselors, a meeting of the parts before mediation was not advisable and cancelled the lunch scheduled for 05/24/2018.

49. On 07/06/2018 Francisco Mimo-Lannoy and counsel for Defendants show up for mediation. Defendants had not yet filled a formal response to the complaint.

50. Both parties take their oats, Defendants alleged their surveillance video is retained only for 45 days and they were notified of the complaint 47 days after the incident, however, they didn't offer any prove of such surveillance retention policy.

51. Defendants alleged Francisco Mimo-Lannoy was kept apart from his husband, due to their spine and head injury protocol, however, they didn't offer any proof that such protocol existed, rather handed Francisco Mimo-Lannoy a copy of the Patients Bill of Rights, which ironically says, patients have a right to have the visitor of their preference with them. Furthermore, apparently, once Steven Mimo-Lannoy caused the scene at the waiting area, such spine head and injury protocol ceased to apply.

52. Francisco Mimo-Lannoy felt their lack of filing a proper response to his complaint and their laughable response added insult to injury and told them mediation was over and he would pursue the matter in Federal Court.

## **FIRST CAUSE OF ACTION**

## **(Violation of WIS Stat § 106.52)**

53. Plaintiffs hereby repeat, reiterate and re-allege each and every previous allegation as if fully set forth herein.

54. Defendants are public accommodation as that term is used in WIS Stat § 106.52.

55. Defendants, through its agents or employees, intended to discriminate against or actually discriminated against Plaintiffs based on their sexual orientation by refusing to provide Plaintiffs with the same services as straight individuals and by acting in discriminatory ways towards Plaintiffs, that attacked, intimidated and demeaned Plaintiffs because they are gay men.

56. Through its discriminatory conduct, Defendants denied Plaintiffs equal accommodations, advantages, facilities and privileges in connection with Defendants services because they are gay.

57. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of WIS Stat § 106.52, Plaintiffs have suffered, and continue to suffer, economic damages, mental anguish, emotional distress and personal injuries for which they are entitled to an award of damages.

58. Plaintiffs assert the right to civil action under WIS Stat § 106.52.

## SECOND CAUSE OF ACTION

## (Violation of State of Wisconsin Constitution. Article I § 1)

59. Plaintiffs hereby repeat, reiterate and re-allege each and every previous allegation as if fully set forth herein.

60. The Constitution of the State of Wisconsin grants equal rights to all people.

61. Pursuant to the constitution of the State of Wisconsin Article I § 9, Plaintiffs assert their right to remedies for the violation they experienced and the pain Plaintiffs have suffered, and continue to suffer, economic damages, mental anguish, emotional distress and personal injuries for which they are entitled to an award on damages.

## THIRD CAUSE OF ACTION

## (Violation of 28 U.S. Code § 1343)

62. Plaintiffs hereby repeat, reiterate and re-allege each and every previous allegation as if fully set forth herein.

63. The conduct of Defendants was a conspiration to violate Plaintiffs rights as a married couple, Defendant actions were in violation of 28 U.S. Code § 1343; Plaintiffs have suffered, and continue to suffer, economic damages, mental anguish, emotional distress and personal injuries for which they are entitled to an award of damages.

## FOURTH CAUSE OF ACTION

## (Violation of 42 U.S. Code § 2000b–2)

64. Plaintiffs hereby repeat, reiterate and re-allege each and every previous allegation as if fully set forth herein.

65. The conduct of Defendants was a direct violation 42 U.S. Code § 2000b-2; Plaintiffs have suffered, and continue to suffer, economic damages, mental anguish, emotional distress and personal injuries for which they are entitled to an award of damages.

## FIFTH CAUSE OF ACTION

## (Violation of Plaintiffs Constitutional Rights)

66. Plaintiffs hereby repeat, reiterate and re-allege each and every previous allegation as if fully set forth herein.

67. All married couples are afforded by law rights and responsibilities, including the statutory right to hospital visitation, including ICU and off hours visitations.

68. Under the Ninth Amendment of the US Constitution Plaintiffs assert their rights as a married couple.

69. Under the Seventh Amendment of the US Constitution Plaintiffs assert their right to seek remedy for the violation they experienced at the hands of Defendants and the pain Plaintiffs have suffered, and continue to suffer, economic damages, mental anguish, emotional distress, personal injuries for which they are entitled to an award on damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of Wisconsin and the laws of the US;

B. An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with Defendants, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated;

D. An award of damages against Defendants, and/or any jointly or severally liable entity and/or person, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages;

E. An award of damages against Defendants, and/or any jointly or severally liable entity and/or person, in an amount over $75,000, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages;

F. An award of $250,000 for punitive damages, and any applicable penalties;

G. Prejudgment interest on all amounts due;

H. An award of costs that Plaintiffs incur in this action; including, but not limited to court costs, transportation, expert testimony; as well as, an award of reasonable attorneys' fees to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: July 25, 2019
Respectfully submitted,

Plaintiffs, Francisco Mimo-Lannoy and Steven Mimo-Lannoy,

X_____
Francisco Mimo-Lannoy

X_____
Steven Mimo-Lannoy