# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

FRANCISCO J. MIMO-LANNOY and
STEVEN H. MIMO-LANNOY,
      Plaintiffs,

v.                                   Case No. 19-C-1087

FROEDTERT SOUTH, INC.; SAINT
CATHERINE'S MEDICAL CENTER;
DANIELLE DUMAS; and ASHLEY TOBIN,
      Defendants.

---

## DECISION AND ORDER

Francisco J. Mimo-Lannoy and Steven H. Mimo-Lannoy, proceeding *pro se*, filed a complaint alleging that, while Francisco was a patient in the emergency room of St. Catherine's hospital, the defendants refused to allow Steven to see Francisco because of his sexual orientation. Primarily, the plaintiffs allege that such conduct violated Wisconsin Statute § 106.52(3)(A)2, which provides in relevant part that "[n]o person may . . . [g]ive preferential treatment to some classes of persons in providing services or facilities in any public place of accommodation or amusement because of . . . sexual orientation." Before me now is the defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), the plaintiffs' motion to amend their complaint, and the plaintiffs' "joinder claim," which I construe as a motion to file a supplemental pleading under Federal Rule of Civil Procedure 15.

## I. BACKGROUND

According to the allegations of the complaint, the plaintiffs are citizens of Illinois and married to each other. On January 14, 2018, they traveled to a resort in Kenosha

County, Wisconsin, to go tubing. While tubing, Francisco was struck by another tuber and began experiencing extreme back pain and an inability to move. Paramedics were called, and they transported Francisco to St. Catherine's hospital in Kenosha. St Catherine's is operated by defendant Froedtert South, Inc., a Wisconsin corporation that has its principal place of business in Wisconsin.

When the ambulance arrived at the hospital, Francisco was taken into the emergency room for treatment. Steven arrived at the hospital at approximately the same time as the ambulance and saw the paramedics taking Francisco into the emergency room. Steven entered the hospital and spoke to the receptionist, defendant Danielle Damask. He asked her if he could follow his husband into the emergency room. She told him, in a voice that Steven considered rude, that it would be a few minutes before he could see Francisco and that he should have a seat in the waiting area.

At about the same time, Francisco asked his nurse, defendant Ashley Tobin, if she could bring his husband in to see him. She initially told him that she would bring him in after emergency room personnel completed his intake. Later, when Francisco asked the nurse a second time if Steven could be brought in, she told him that the doctor did not want family members in the room while he was conducting the examination.

Out in the waiting room, Steven saw defendant Damask personally escort other family members into the emergency room to see their loved ones. Steven asked Damask a second time whether he could see his husband, and she replied that Francisco's room was too small for visitors.

After waiting for about an hour without being allowed to see Francisco, Steven asked Damask a third time whether he could see his husband. The plaintiffs allege that

2

Damask responded in "a very rude and sarcastic tone" and said that "they know already *someone* is here to see him." Am. Compl. ¶ 32 (emphasis in original). Steven took offense to being described as "someone" rather than the patient's husband, and he began yelling and demanding to see his husband immediately. Damask finally agreed to allow Steven to enter the emergency department. However, instead of escorting him to Francisco's room, as she did for the family members of other patients, she buzzed him into the emergency department without telling him how to find Francisco's room. When Steven found the room and went inside, he noticed that it was "huge" and had its own bathroom, contrary to what Damask had said about the room's being too small for visitors.

The plaintiffs believe that hospital staff treated them differently than other patients and visitors because of their sexual orientation. On March 2, 2018, they filed a complaint about the incident with Wisconsin's Equal Rights Division, in which they alleged that the hospital discriminated against them on the basis of sexual orientation in violation of Wis. Stat. § 106.52. The plaintiffs later voluntarily withdrew the administrative complaint.

On September 14, 2018, the plaintiffs filed a complaint in the United States District Court for the Northern District of Illinois against Froedtert South, Inc. The complaint was filed on a form the district made available to pro se litigants. In the "statement of claim" section of the form, the plaintiffs wrote that they were denied visitation while they were in the emergency room. They purported to sue under Title II of the Civil Rights Act of 1964 and the United States Constitution. After the defendant appeared, the parties agreed to transfer venue to the Eastern District of Wisconsin, and

3

the case was assigned to Chief Judge Pamela Pepper of this court. *See* E.D. Wis. Case No. 18-C-1867.

After Froedtert filed a motion to dismiss the plaintiffs' complaint, Chief Judge Pepper determined that Title II of the Civil Rights Act did not apply to claims of discrimination based on sexual orientation. She also explained that the plaintiffs had not stated a claim for relief under any other federal law and then granted the motion to dismiss. However, she also granted the plaintiffs leave to file an amended complaint if they believed that they could state a claim on which a federal court could grant relief.

The plaintiffs filed an amended complaint. They alleged that the court had both federal-question jurisdiction and diversity jurisdiction. *See* ECF No. 33 in 18-C-1867 at p. 2 of 5. They repeated their factual allegations concerning the sexual-orientation discrimination they experienced at Froedtert, and they alleged that such conduct violated federal regulations relating to Medicare. Again, Froedtert moved to dismiss. In a written opinion, Chief Judge Pepper granted the motion. She determined that the regulation mentioned in the plaintiffs' complaint did not grant a private cause of action. She then wrote:

> The plaintiffs have alleged that they were treated rudely—lied to, kept apart from each other during an extremely stressful time, discriminated against. If their allegations are true, they were wronged, and they have suffered. But the wrong they have identified, and the suffering they have described, can't be addressed through any of the federal laws or regulations they identified in their original complaint or this amended complaint. The court does not know whether there might be common-law claims the plaintiffs could allege in Wisconsin state court. All this court can do is consider whether they have stated *federal* causes of action in this *federal* lawsuit. They have not.

ECF No. 40 in 18-C-1867 at 10. The Clerk of Court entered judgment on July 12, 2019, and the plaintiffs did not appeal.

4

On July 29, 2019, the plaintiffs filed their complaint in this action. The complaint involves the same facts as their prior federal complaint, namely, the sexual-orientation discrimination the plaintiffs believe they experienced on January 14, 2018 at St. Catherine's. Like in the prior action, the plaintiffs name Froedtert South, Inc. as a defendant, but they also name the hospital itself, Danielle Dumas (the ER receptionist), and Ashley Tobin (Francisco's attending nurse) as defendants. The complaint alleges a claim under Wis. Stat. § 106.52 for sexual-orientation discrimination in a place of public accommodation. The complaint purports to state four other claims for relief: (1) violation of Article I, section I of the Wisconsin Constitution; (2) violation of 28 U.S.C. § 1343; (3) violation of 42 U.S.C. § 2000b-2; and (4) violation of "constitutional rights." However, after the defendants moved to dismiss the complaint, the plaintiffs withdrew these four claims. *See* ECF No. 14 at ¶¶ 3–5. But they later filed an amended complaint and a proposed second amended complaint in which they seek to add new claims: (1) a claim under 42 U.S.C. § 1985(3) for conspiracy to violate civil rights; (2) claims for negligent and intentional infliction of emotional distress; and (3) a claim for "gross negligence."

The plaintiffs have also filed a document labelled "joinder claim" in which they seek to add a claim for defamation against Froedtert South, Inc. *See* ECF No.16. In this document, they allege that, on July 29, 2019, they contacted media outlets to tell them about their lawsuit and the discrimination they believe they experienced at Froedtert. Two local television stations expressed interest in their story and interviewed them on camera. The plaintiffs believed that the story would air on the news either that night or the next morning. However, the stations contacted Froedtert to get its side of the story. Froedtert told the stations that it could not comment on pending litigation but that the

5

plaintiffs "had filed claims in 5 different instances/places and that all 5 claims had been dismissed by the judges." *Id.* at 4. The plaintiffs allege that this statement was false. Although it was true that they had claims pending in multiple forums (two at the Equal Rights Division, one in the Northern District of Illinois, and two in the Eastern District of Wisconsin), the plaintiffs contend that they had not experienced five dismissals. Rather, the ERD complaints were withdrawn, the Northern District of Illinois case was transferred, and the second Eastern District of Wisconsin case was still pending. Only one case—the Eastern District of Wisconsin case assigned to Chief Judger Pepper— was dismissed by a judge. The plaintiffs allege that, because of Froedtert's statement, the television stations decided not to air the plaintiffs' story.

The defendants have moved to dismiss the plaintiff's complaint for failure to state a claim upon which relief may be granted, and they oppose the plaintiff's latest motion to file an amended complaint. They also move to dismiss the plaintiffs' "joinder claim." I consider these matters below.

## II. DISCUSSION

The plaintiffs have filed four different complaints in this action: (1) their original complaint filed on July 29, 2019; (2) their first amended complaint, which they filed as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B) on October 11, 2019; (3) their "joinder claim" filed on November 14, 2019; and (4) their proposed second amended complaint filed on April 8, 2020. For purposes of addressing the defendants' motion to dismiss, I will evaluate the first amended complaint. I will then consider the plaintiffs' motion for leave to file the second amended complaint. Finally, I will construe the plaintiffs' "joinder claim" as a motion for leave to file a supplemental

pleading under Federal Rule of Civil Procedure 15(d). I so construe the motion because it sets out a claim based on events that transpired after the plaintiffs commenced this action, namely, the events involving the plaintiffs' interview with media outlets and Froedtert's allegedly defamatory statements to the media.

The defendants move to dismiss the plaintiffs' non-defamation claims on the ground that they are barred by *res judicata*, also known as claim preclusion. A dismissal for res judicata is appropriate when there was (1) a final decision in the first suit on the merits; (2) the second dispute arises from the same transaction, as identified by the same operative facts; (3) and involves the same parties to the first suit (either directly or through privity of interest). *Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Circ. 2011). The defendants contend that the prior federal case dismissed by Chief Judge Pepper qualifies as a first suit that was dismissed on the merits and that this, second suit arises from the same transaction and involves the same parties or their privies.

I agree that this suit and the suit dismissed by Chief Judge Pepper involve the same transaction: they both concern the alleged sexual-orientation discrimination that occurred at St. Catherine's on January 14, 2018. Moreover, Chief Judge Pepper found that the plaintiffs had failed to state a federal claim for relief, and this was a decision on the merits of any potential federal claim the plaintiffs might have brought concerning the incident. *See, e.g., Lee v. Vill. of River Forest*, 936 F.2d 976, 981 (7th Cir. 1991) ("A Rule 12(b)(6) dismissal for failure to state a claim upon which relief may be granted 'is a decision on the merits with full *res judicata* effect.'"). However, in her dismissal order, Chief Judge Pepper indicated that she did not know whether the plaintiffs could state a claim for relief under state law. She wrote that she was considering only "whether they

7

have stated *federal* causes of action in this *federal* lawsuit." Order at 10 (emphasis in original). Apparently, Chief Judge Pepper assumed that a federal court would not have had subject-matter jurisdiction over any state-law claims.[1] Thus, I read her dismissal order as dismissing any potential state-law claims without prejudice for lack of subject-matter jurisdiction. Of course, a dismissal for lack of subject-matter jurisdiction is not a dismissal on the merits, and therefore the dismissal order in the prior action does not preclude the plaintiffs from pursuing state-law claims based on the incident.[2] Thus, the plaintiffs' state-law claims for violation of Wis. Stat. § 106.52, for intentional and negligent infliction of emotional distress, and for gross negligence are not barred by *res judicata*. Moreover, because the plaintiffs are citizens of Illinois, the defendants are citizens of Wisconsin, and the amount in controversy is alleged to exceed $75,000, the court has subject matter jurisdiction to hear the plaintiffs' state-law claims under 28 U.S.C. § 1332. Accordingly, the state-law claims are properly brought in federal court.

*Res judicata* does, however, bar any federal claims against Froedtert South, Inc., because Chief Judge Pepper clearly dismissed the plaintiffs' federal claims on the merits. This means that the plaintiffs cannot pursue their civil-rights conspiracy claim under 42 U.S.C. § 1985 against Froedtert South, Inc. However, in the present action,

---

[1] I infer that she only assumed an absence of federal jurisdiction because she did not expressly discuss jurisdictional issues and did not address the plaintiffs' allegations concerning diversity jurisdiction.

[2] A prior jurisdictional ruling can preclude a plaintiff from relitigating claims in federal court, but only if the issue of federal jurisdiction was "'actually litigated' and decided in the first case." *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 335 (7th Cir. 2015). As I discussed in the prior footnote, the issue of federal jurisdiction over state-law claims was not actually litigated in the prior suit or decided by Chief Judge Pepper. Instead, Chief Judge Pepper seemed to have overlooked the possibility of exercising diversity jurisdiction over any state-law claims.

the plaintiffs sue defendants that were not parties to the prior action, including Danielle Damask and Ashley Tobin.[3] These were the employees of Froedtert who allegedly carried out the discriminatory acts. The defendants contend that, as employees of Froedtert, they are in privity with it for *res judicata* purposes. However, it is not clear that an employee of a corporation is necessarily in privity with the corporation. The defendants cite only an unpublished case on this point, and even that case allows that the interests of a corporation and its employees might diverge and therefore preclude a finding of privity. *See Harrison v. Deere & Co.*, 533 F. App'x 644, 649 (7th Cir. 2013). But I need not explore this issue for, as explained below, the plaintiffs' conspiracy claim fails on the merits.

As an alternative to dismissal based on *res judicata*, the defendants contend that the plaintiffs have failed to state viable state-law claims. First, they contend that the plaintiffs' claim under Wis. Stat. § 106.52 is barred by the one-year statute of limitations. *See* Wis. Stat. § 106.52(4)(e)2. Here, the defendants note that the alleged discrimination occurred on January 14, 2018 and that the plaintiffs did not commence the present action until July 29, 2019. However, under Wisconsin law, a period of limitation is tolled during the time when a claim is pending in a "non-Wisconsin forum," which includes a Wisconsin federal court. *See* Wis. Stat. § 893.15(3). The plaintiffs commenced their prior action in federal court on September 14, 2018, and that action was not finally disposed of until July 12, 2019. Although the plaintiffs did not mention

---

[3] The plaintiffs also name St. Catherine's Medical Center as a defendant, but this is not a suable entity separate from Froedtert South, Inc. It is simply the name of the hospital operated by Froedtert South, Inc. Thus, St. Catherine's Medical Center will be dismissed as a party.

9

Wis. Stat. § 106.52 in their prior complaint, under federal pleading standards, plaintiffs are not required to plead legal theories or cite the statutes under which their claims arise; all they must do is plead grievances. *See, e.g., ACF 2006 Corp. v. Mark C. Ladendorf, Attorney at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016). In their prior suit, the plaintiffs' grievance was that they were subject to sexual-orientation discrimination at a place of public accommodation. This was enough to state a claim for relief under Wis. Stat. § 106.52 even if the plaintiffs did not cite that law, and therefore I conclude that the limitations period was tolled while the plaintiffs' prior suit was pending. Accordingly, the plaintiffs claim against Froedtert under § 106.52 is not barred by the statute of limitations. But because the individual defendants—Damask and Tobin—were not parties to the prior action, the Wisconsin tolling statute does not apply to the § 106.52 claims against them. Those claims will be dismissed as untimely.

Next, the defendants contend that the plaintiffs have failed to state a conspiracy claim under 42 U.S.C. § 1985 because (1) they have not adequately pleaded the existence of a conspiracy and (2) sexual-orientation discrimination is not within the scope of § 1985(3). I agree with first point, and therefore I do not address the second. The factual allegations in the complaint do not suggest that Damask and Tobin conspired with each other and with Froedtert to deprive the plaintiffs of their civil rights. A conspiracy is an agreement, *see Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 827 (7th Cir. 2019), and here no facts suggest that the defendants entered into any such agreement. As far as the complaint reveals, Damask and Tobin never coordinated their actions with respect to the plaintiffs; they appeared to be acting independently, with Damask dealing with Steven in the reception area and Tobin

10

treating Francisco in the emergency room. Moreover, to the extent the plaintiffs contend that Froedtert had a policy of discriminating against homosexuals and that Tobin and Damask carried out that policy, the plaintiffs' complaint would be barred by the intracorporate conspiracy doctrine. That doctrine provides that "a conspiracy cannot exist solely between members of the same entity," including between a corporation and its employees who are merely carrying out corporate policy. *See Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 632–33 (7th Cir. 1999). Thus, I will dismiss the plaintiffs' § 1985 conspiracy claims for failure to state a claim.

Next, the defendants contend that I should not grant the plaintiffs leave to file their second amended complaint—which seeks to add claims for intentional and negligent infliction of emotional distress and gross negligence to this suit—because granting such leave would be futile. The defendants correctly note that Wisconsin does not recognize a claim for gross negligence. *See Heritage Farms, Inc. v. Markel Inc. Co.*, 316 Wis. 2d 47, 70 (2009). Further, the proposed second amended complaint does not state a claim for intentional infliction of emotional distress. Such a claim requires that the defendants have intended to cause emotional distress. *See Rabideau v. City of Racine*, 243 Wis. 2d 486, 501–02 (2001). Here, the plaintiffs allege that the defendants engaged in conduct that caused them to experience emotional distress, but they do not allege that the defendants engaged in that conduct *for the purpose of causing them emotional distress. See* Second Am. Compl. ¶¶ 61–64. Finally, the proposed second amended complaint does not state a claim for negligent infliction of emotional distress because it does not contain facts suggesting that the defendants' conduct violated any

11

applicable standard of care. *See Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis.2d 627, 632 (1994).

Although I will not allow the plaintiffs to amend their complaint to state tort claims for emotional distress, I note that the plaintiffs may still obtain damages for emotional distress as part of their claim under Wis. Stat. § 106.52. That statute allows plaintiffs to recover "damages including punitive damages." *Id.* § 106.52(4)(e)1. Therefore, if the plaintiffs establish a violation of the statute, they will be able to recover damages for any emotional harm they suffered as a result of the violation.

The remaining matter is the plaintiffs' motion to supplement their complaint with a claim for defamation against Froedtert. I will deny this motion on the ground that the defamation claim would be futile. Under Wisconsin law, a defamation claim has three elements: (1) a false statement, (2) communicated by speech, conduct, or in writing to a person other than the one defamed, and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 534 (1997). Here, the plaintiffs' defamation claim falters on the third element. The plaintiffs allege that the defendants told media outlets that five of their suits had been dismissed. This statement was technically inaccurate because, although the plaintiffs had arguably commenced five different suits, only one of them had been dismissed. The others were either withdrawn, transferred to a different venue, or still pending. However, the important point was that a court had already rejected the plaintiffs' attempt to bring a lawsuit based on the alleged discrimination, and this was true. The legal details about whether the other actions were

12

withdrawn or transferred or still pending were largely irrelevant, and in any event, they did not harm the plaintiffs' reputation. Accordingly, the plaintiffs cannot state a claim against Froedtert for defamation.

## III. CONCLUSION

In sum, the plaintiffs may proceed with their claim for sexual-orientation discrimination in a place of public accommodation under Wisconsin Statute § 106.52 against Froedtert. However, the plaintiffs' remaining claims are not viable.

Accordingly, **IT IS ORDERED** that the defendants' motion to dismiss (ECF No. 8) is **GRANTED** to the extent that all claims other than the plaintiffs' Wis. Stat. § 106.52 claim against Froedtert are dismissed. The motion is **DENIED** as to the § 106.52 claim.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss the plaintiffs' "joinder claim" (ECF No. 18) is **GRANTED**.

**FINALLY, IT IS ORDERED** that the plaintiffs' motion for leave to file the second amended complaint (ECF No. 21) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of May, 2020.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge

13